# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JULIE SLIVKA,

    Plaintiff,

v.

THE YOUNG MEN'S CHRISTIAN ASSOCIATION
OF THE PIKES PEAK REGION,

and

CARLOS LOZANO.

    Defendants.

## COMPLAINT

    Plaintiff, Julie Slivka, (hereinafter "Plaintiff") brings this complaint against the Defendants, The Young Men's Christian Association of the Pikes Peak Region ("YMCA") and Carlos Lozano (collectively "Defendants"), alleging that YMCA is responsible for unlawful employment discrimination and retaliation against Ms. Slivka on the basis of her sex and disability arising after fellow YMCA employee Mr. Lozano's sexually assaulted her. Plaintiff also brings her common law assault, battery, and negligence allegations against Mr. Lozano under this court's supplemental jurisdiction.

### I: Parties, Jurisdiction, and Venue

    1. Plaintiff is an adult individual residing in El Paso County, Colorado. She was an employee (Director of Population Wellness) of the YMCA.

    2. Defendant YMCA is a Non-Profit Corporation, located at 316 N. Tejon Street, Colorado Springs, El Paso County, CO 80903. Defendant is believed to employee more than 300 people and subject to the provision of Title VII. It operates under the trade name "YMCA of the Pikes Peak Region."

    3. Defendant Lozano is a former YMCA employee believed to reside in El Paso County, Colorado.

4. This court has personal jurisdiction over the parties because all parties are residents of Colorado for jurisdictional purposes. Plaintiff exhausted her administrative relief by filing a timely charge with the EEOC alleging sex and disability discrimination and retaliation. The EEOC issued a right to sue letter on November 6, 2018.

5. This court has subject matter jurisdiction pursuant as to the federal claims against YMCA pursuant to to 28 U.S.C. 1331 and subject matter jurisdiction pursuant to 28 U.S.C. 1367(a) as to the state law claims against Mr. Lozano.

6. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in the District of Colorado and the District of Colorado has personal jurisdiction over the parties.

## II. Factual Allegations

### A. The Assault

7. On February 13, 2018, Ms. Slivka went to a restaurant with Mr. Lozano in Fountain, Colorado called Sarge's.

8. Ms. Slivka and Mr. Lozano both worked for the YMCA, Ms. Slivka as the Director of Population Wellness and Mr. Lozano as the Director of a YMCA facility located in Southeastern Colorado Springs ("Southeast").

9. Ms. Slivka worked with multiple departments within the YMCA to coordinate their efforts with regards to community wellness programs that the YMCA wished to support. Southeast was one of those departments.

10. Ms. Slivka's job required her to occasionally work with Mr. Lozano regarding programs that Southeast would participate in.

11. Mr. Lozano, as the director of an entire facility, is higher level employee of the YMCA with considerable influence on other employees in the YMCA.

12. As a result of working together, Ms. Slivka and Mr. Lozano became social acquaintances and interacted with each other outside working hours. Mr. Lozano had even been to Ms. Slivka's house and knew her husband.

13. During the relevant time period, Mr. Lozano was going through a divorce with his wife, who also worked at the YMCA.

14. On the day of the assault, Mr. Lozano invited Ms. Slivka to join him at Sarge's after long day working together.

15. Ms. Slivka, knowing that Mr. Lozano appeared to be having a hard time with the divorce, accepted the invitation as a friend.

16. Ms. Slivka wanted to be a compassionate person and figured that Mr. Lozano just needed to talk to someone.

17. At Sarge's, despite knowing that Ms. Slivka has not eaten that day, is a rather petite woman, and drove there, Mr. Lozano ordered her multiple alcoholic beverages.

18. Mr. Lozano then pressured her into drinking those beverages, and quickly. A binge drinking culture is prevalent at the YMCA and Mr. Lozano was perpetuating that by purchasing Ms. Slivka unwanted alcoholic beverages and pressuring her into consuming them.

19. Older men in positions of power sleeping with young women in subordinate positions is also prevalent at the YMCA and, that night, Mr. Lozano was trying to join this club of men who preyed on the women working for them.

20. Mr. Lozano quickly steered his conversation with Ms. Slivka to the overtly sexual and began to touch her on intimate areas of her body over her clothing.

21. Ms. Slivka attempted to keep it cool under these circumstances and attempted to steer the conversation elsewhere.

22. Mr. Lozano, however, ratcheted up his overtly sexual conduct and continued to touch Ms. Slivka despite repeated requests to stop.

23. Eventually, Ms. Slivka could not bear Mr. Lozano's behavior anymore and tried to leave him at Sarge's.

24. Ms. Slivka's phone was dead, so she could not call her husband, a friend, or a taxi to escape. Ms. Slivka, however, knew that she had been drinking and should not drive.

25. So Ms. Slivka decided she will go out to her car, charge her phone, and call for a ride when the phone is charged up enough.

26. When Ms. Slivka gets up to leave, Mr. Lozano immediately follows her out to her car.

27. Instead of taking the hint that Ms. Slivka does not want to remain with him, Mr. Lozano pursues Ms. Slivka out of Sarge's, through the parking lot, and to the driver's side door of Ms. Slivka's car.

28. While at Ms. Slivka's car, Mr. Lozano forcibly prevented Ms. Slivka from closing herself inside the car by holding the door open while Ms. Slivka tried to shut it.

29. While forcing the door open, Mr. Lozano bent down and attempted to forcibly kiss Ms. Slivka multiple times.

30. Ms. Slivka pushed Mr. Lozano off of her and shut the car door.

31. In a panic that Mr. Lozano will not cease his behavior, Ms. Slivka puts her car into gear and tries to drive away.

32. Her flight from Mr. Lozano is abruptly terminated when Ms. Slivka runs her car into a median in the parking lot almost immediately.

33. Coincidentally, emergency response personnel was already there eating at Sarge's and they respond to this accident. Mr. Lozano stops his harassment while police and fire personnel are on scene.

34. The police responding to the accident compelled Ms. Slivka to perform a standardized field sobriety test that they alleged she failed, and police then transported Ms. Slivka to a police station for DUI processing.

35. Mr. Lozano, instead of attempting to notify Ms. Slivka's husband or other family members, decides to keep quiet.

36. Instead of trying to notify Ms. Slivka's husband of the turn of events, Mr. Lozano goes to the police station himself.

37. Normally, a random civilian showing up to a police station to appeal for the release of someone recently arrested will be politely shooed away, but Mr. Lozano is no ordinary civilian. His position at the YMCA allowed him to form personal relationships with many powerful people who worked for the Fountain Police Department.

38. Simply put, the police knew Mr. Lozano and trusted him.

39. As is normal procedure in El Paso County, the police discharged Ms. Slivka from custody with a summons after she performed an alcohol breath test that indicated her breath contained excess alcohol content.

40. As is not normal procedure in El Paso County, the police handed Ms. Slivka back to Mr. Lozano, who was waiting for Ms. Slivka's release at the police station.

41. Mr. Lozano then told Ms. Slivka that he had influenced the police to release her.

42. Mr. Lozano also told Ms. Slivka that he could insure that the investigating police officers would not show up to hearings so she could avoid punishment.

43. Mr. Lozano then offered Ms. Slivka a ride home.

44. Ms. Slivka had attempted to contact her husband to pick her up, but was unsuccessful.

45. Feeling like she had no other option, it was dark and cold with her home miles away, Ms. Slivka accepted the offer for a ride home

46. Mr. Lozano, however, did not take her home, her took her to Southeast first.

47. After parking at Southeast, Mr. Lozano told Ms. Slivka that he needed to go into his office within facility to make copies of a lease agreement. Mind you, it is the middle of the night.

48. Ms. Slivka told him that she just wanted to go home.

49. Instead of honoring that request, Mr. Lozano told Ms. Slivka to follow him into the building for safety.

50. Ms. Slivka, following the orders of Mr. Lozano, follows him into the building.

51. As it turns out, Mr. Lozano's had other things than copies on his mind.

52. Mr. Lozano took Ms. Slivka by the shoulder and forced her into his office and renews his assault on her, making contact with Ms. Slivka's intimate parts, such as the breasts, buttocks, and crotch, using his hands.

53. Ms. Slivka was able to break away from him and tried to flee to the bathroom.

54. Mr. Lozano, however, quickly caught up to Ms. Slivka and pinned her with his body next to copying machine in the cubical area. Mr. Lozano then again touched her intimate areas such as the breasts, buttocks, and crotch. He at that point asked her to have sex with him.

55. Ms. Slivka did not consent to Mr. Lozano's behavior and told him stop repeatedly.

56. Ms. Slivka repeatedly let Mr. Lozano know she did not consent to his behavior through her acts and attitude.

57. Because Ms. Slivka told Mr. Lozano to stop, Mr. Lozano had actual knowledge that Ms. Slivka did not consent to his behavior.

58. In Colorado, Mr. Lozano's conduct amounts to (at least) unlawful sexual contact and is a sex offense.

5

59. Thankfully, Ms. Slivka was able to push Mr. Lozano off of her again and escaped from the office.

60. However, Ms. Slivka still needed to go home and Mr. Lozano, being her ride, took her home after this incident at Southeast.

61. While this ride home may indicate some sort of remorse on his part, the fact that during the ride from Southeast to Ms. Slivka's home Mr. Lozano continued to touch Ms. Slivka and discuss sexual topics indicates otherwise.

### B. The Context

62. The YMCA is a huge organization in the Colorado Springs area, operating 18 facilities located in El Paso County.

63. The YMCA is lead by President & CEO Boyd Williams, a man who has worked YMCA chapters across the country since graduating from Kennesaw State University with B.S. in Sports Management.

64. Upon information and belief, it is common knowledge at the YMCA that female employees who have sex with Mr. Williams are more likely to be promoted within the organization than female employees who do not.

65. This behavior sets the tone for the organization; it lets subordinates know that using their power in the workplace to obtain sex is acceptable.

66. What makes this even more problematic are the demographics of YMCA employees. There is essentially an upper level cadre of older men who are supervising and working with many young women who they have authority over. These old men use their power in the workplace to obtain sex from young women.

67. Mr. Lozano was just trying to join the club.

### C: The Results

68. While the assault obviously traumatized Ms. Slivka, causing Post-Traumatic Stress Disorder, the YMCA's non-response aggravated the condition to the breaking point.

69. Not only did a colleague that she looked up to sexually assault her that night, but Ms. Slivka would bear the unfortunate reality that the organization that she worked for and admired would be complicit in protecting Mr. Lozano from discipline, create a hostile working environment, retaliate against her, and fail to make reasonable accommodations for the Post-Traumatic Stress Disorder she suffered after the assault.

70. Ms. Slivka, through counsel, notified the YMCA of Mr. Lozano's assault.

71. Ms. Slivka asked for the YMCA to ensure that she would not need to work with Mr. Lozano because of the assault and for their help to get him counseling for his problems with sex and alcohol.

72. Upon receipt of the complaint, the YMCA retained outside counsel to perform an investigation of Mr. Slivka's complaint against Mr. Lozano.

73. While this would seem like the appropriate response, the YMCA used this outside counsel to paint a veneer of legitimacy over the hostile work environment it cultivated.

74. First, this investigation was nothing more than having an attorney interview Ms. Slivka and Mr. Lozano where the attorney would ask them to tell their story and she would simply type up what each person said, ask them to review such, and the have them sign it.

75. Upon information and belief, that is the only investigation that was performed. This is pled as upon information and belief because the YMCA refused to share any details or results of the investigation with Ms. Slivka or her counsel.

76. Second, because the investigation did no work other than obtaining two statements that were reasonably likely to be contradictory (expecting Mr. Lozano to simply admit what happened to an outside investigator is ludicrous), the investigation would only cultivate facts to support a finding that there is inconclusive evidence of the assault.

77. Under information and belief, the YMCA ensured that the investigation would reach that favored result of inconclusive evidence by instructing outside counsel to limit their inquiry to only interviewing Ms. Slivka and Mr. Lozano.

78. Under information and belief, YMCA did not look at any additional evidence beyond the two statements of the victim and perpetrator.

79. Under information and belief, YMCA did not consult security camera footage to verify allegations made.

80. Under information and belief, YMCA did not consult copier or printer logs to verify allegations made.

81. Under information and belief, YMCA did not interview overnight maintenance and security staff to verify allegations made.

82. Under information and belief, YMCA did not interview colleagues of Mr. Lozano about sexual behavior with other women working with him.

83. Under information and belief, YMCA did not interview colleagues of Ms. Slivka about their observations of her dramatic shift in mental health after the assault.

84. The YMCA essentially did nothing in response to Ms. Slivka's assault.

85. The YMCA refused take ANY measures to protect Ms. Slivka from Mr. Lozano.

86. All Ms. Slivka wanted from the YMCA was help to stay away from her assailant by guaranteeing she would not have to work with him and she repeatedly let human resources know this.

87. YMCA human resources personnel told Ms. Slivka it would make no accommodation for her request to guarantee she did not have to work with her assailant.

88. Even when Ms. Slivka informed the YMCA that she now suffered from Post-Traumatic Stress Disorder that was being triggered by the fear of having an encounter with Mr. Lozano, YMCA personnel told her no accommodation would be made and that she should "pray on it."

89. YMCA took no steps to protect Ms. Slivka from encountering Mr. Lozano and this created a hostile work environment based on sex and is a refusal to accommodate her disability.

90. Ms. Slivka tried to make accommodations for herself by requesting medical leave to ensure she could be free from contacting her assailant, but Ms. Slivka eventually exhausted all of her unpaid leave time.

91. When Ms. Slivka exhausted her unpaid medical leave, she against told YMCA human resources personnel that she took the leave because she would have her PTSD triggered by encountering Mr. Lozano and again requested a reasonable accommodation that she be scheduled in a way to prevent her from coming into contact with him.

92. Quite predictably at this point, the YMCA again refused her request for accommodation.

93. Upon information and belief, the motivating factor for the YMCA's refusal to make any accommodation for Ms. Slivka was to retaliate against her for making a complaint about Mr. Lozano's assault upon her and requesting action be taken by YMCA in response to assure her of a non-hostile work environment.

94. The YMCA deliberately made Ms. Slivka's working conditions intolerable because they subjected her to a work environment where her PTSD could be triggered at any moment.

95. And in response to the YMCA's retaliation and failure to mitigate the damage caused by Mr. Lozano, Ms. Slivka did what the YMCA wanted her to do, and she quit.

95. However, Ms. Slivka would not give up. She timely filed a charge of sex and disability discrimination with retaliation for complaining about the sex discrimination with the EEOC. Ms. Slivka received her right to sue letter on November 6, 2019, and this complaint is therefore now brought to the court.

### III. CLAIMS FOR RELIEF

### CLAIMS AGAINST DEFENDANT YMCA

COUNT ONE: UNLAWFUL SEX DISCRIMINATION
(Hostile Work Environment – Severe Unwelcome Harassment)

96. Plaintiff is female and a member of a protected class.

97. Plaintiff was subjected to unwelcome harassment when Mr. Lozano sexually assaulted her.

98. Plaintiff was subjected to that unwelcome harassment because she is female.

99. The severity of the unwelcome harassment created an abusive working environment by altering a term, condition, or privilege of her employment, specifically the privilege of being free from fear of working with someone who sexually assaulted her.

100. And YMCA is liable for this because it was negligent when it failed to remedy this hostile work environment when its management-level employees knew, or in the exercise of reasonable care should have known, that Mr. Lozano assaulted Ms. Slivka and the YMCA failed to provide ANY remedy for Ms. Slivka. Specifically, the YMCA took no steps to guarantee Ms. Slivka would not encounter Mr. Lozano on the job.

101. This hostile work environment created an intolerable working condition, specifically, the constant triggering of her post-traumatic stress disorder symptoms, and Plaintiff was constructively discharged when she resigned.

102. Accordingly, Defendant YMCA is liable to Plaintiff for economic and non-economic damages.

## COUNT TWO: UNLAWFUL DISABILITY DISCRIMINATION
(Failing to Provide a Reasonable Accommodation)

103. Plaintiff is a person with a disability under the meaning of the American's with Disabilities Act. Ms. Slivka has post-traumatic stress disorder.

104. Defendant YMCA is an employer covered by the American's with Disabilities Act.

105. Plaintiff gave notice to Defendant YMCA of her disability and that the possibility of encountering Defendant Lozano in the workplace was aggravating her post-traumatic stress disorder because Defendant Lozano caused the trauma that caused the disorder.

106. Plaintiff requested Defendant YMCA for a reasonable accommodation, that Defendant YMCA would provide assurance that she would not be exposed to Defendant Lozano.

107. If Defendant YMCA would have provided such assurance, Plaintiff could have performed the essential functions of her job without having to be exposed to Mr. Lozano.

108. Defendant YMCA, however, refused to make the requested accommodation and the intolerable working conditions that resulted, the constant triggering of her post-traumatic stress disorder symptoms, is an adverse employment action given the context pleaded.

109. Plaintiff, due to the intolerable working condition of potential exposure to Defendant Lozano, resigned her position.

110. Accordingly, Defendant YMCA is liable to Plaintiff for economic and non-economic damages.

## COUNT THREE:  RETALIATION FOR OPPOSING UNLAWFUL SEX DISCRIMINATION

111. Plaintiff made her first complaint about Mr. Lozano's workplace assault through a letter drafted by counsel on February 28, 2018.

112. Plaintiff routinely made complaints about Defendant YMCA's failure to take action to provide ANY remedy for Ms. Slivka for that assault. Specifically, the Plaintiff complained to Defendant YMCA's human resources personnel that Defendant YMCA was taking no steps to guarantee Ms. Slivka would not encounter Mr. Lozano on the job and this was creating a hostile work environment based on her sex.

113. Plaintiffs complaints were in opposition to what she reasonably believed was unlawful sex based discrimination she faced because of YMCA's intentional

disregard for this hostile work environment where she faced the constant triggering of her post-traumatic stress disorder symptoms.

114. Defendant YMCA retaliated against Plaintiff soon after her complaints by creating an intolerable working condition, that Plaintiff would have no protection from encountering her assailant at work and be subjected to the constant triggering of her post-traumatic stress disorder symptoms, that resulted is an adverse employment action given the context pleaded.

115. This intolerable working condition amounted to a constructive discharge, forcing the Plaintiff to resign.

116. Accordingly, Defendant YMCA is liable to Plaintiff for economic and non-economic damages.

### CLAIMS AGAINST DEFENDANT CARLOS LOZANO

#### COUNT ONE: ASSAULT

117. Mr. Lozano, with the intent of making a contact with the person of Ms. Slivka or with the intent of putting Ms. Slivka in apprehension of such a contact, when he forcibly touched her intimate parts while sexually assaulting her.

118. Ms. Slivka was placed in apprehension of an imminent contact with her person by the conduct of the Mr. Lozano.

119. Mr. Lozano's forcibly touching of Mr. Slivka intimate parts while sexually assaulting her was or appeared to be harmful or offensive.

120. Ms. Slivka suffered emotional distress due to this assault.

121. Accordingly, Defendant Lozano is liable to Plaintiff for damages.

#### COUNT TWO: BATTERY

122. Mr. Lozano, with the intent of making a contact with the person of Ms. Slivka or with the intent of putting Ms. Slivka in apprehension of such a contact, when he forcibly touched her intimate parts while sexually assaulting her.

123. Ms. Slivka was placed in apprehension of an imminent contact with her person by the conduct of the Mr. Lozano.

124. Mr. Lozano forcibly touching of Mr. Slivka intimate parts while sexually assaulting her was or appeared to be harmful or offensive.

125. Mr. Lozano forcibly touching of Mr. Slivka intimate parts while sexually assaulting her resulted in contact.

126. Ms. Slivka suffered emotional distress due to this battery.

127. Accordingly, Defendant Lozano is liable to Plaintiff for damages.

### COUNT THREE: NEGLIGENCE

128. Mr. Lozano had a duty of reasonable care to avoid causing personal injury to Ms. Slivka by recognizing that she did not want to submit to his sexual requests when she told him to stop touching her.

129. Mr. Lozano breached this duty of reasonable care by persisting in touching her, persisting in his sexual advances, and his ultimate sexual assault upon her.

130. Mr. Lozano's breach of his duty of reasonable care caused Ms. Slivka personal injury.

131. Ms. Slivka suffered emotional distress due to Mr. Lozano's negligence.

132. Accordingly, Defendant Lozano is liable to Plaintiff for damages.

### IV. PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A) Money damages for emotional distress,

B) Money damages for physical distress,

C) Statutory damages,

D) Lost wages,

E) Plaintiff's costs and expenses, including reasonable attorney's fees and expenses.

F) Such other and further relief this court deems just and proper.

### **TRIAL BY JURY DEMANDED**

Respectfully submitted this 4th day of February, 2019

<u>*s/ Ryan C. Gilman, Esq*</u>

Ryan C. Gilman, Esq.
CO #44179
Dickson Law Group
605 S. Tejon St.
Colorado Springs, CO 80903
Telephone: (719) 888-5882
E-mail: ryan.gilman@dicksonlawgroupcolorado.com
*Attorney for Plaintiff Julie Slivka*

13