IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-00313-PAB

JULIE SLIVKA,

    Plaintiff,

v.

THE YOUNG MEN'S CHRISTIAN ASSOCIATION
OF THE PIKES PEAK REGION, and
CARLOS LOZANO,

    Defendants.

---

# ORDER

---

This matter is before the Court on Defendant The Young Men's Christian Association of the Pikes Peak Region's Motion for Gag Order [Docket No. 16] and Defendant The Young Men's Christian Association of the Pikes Peak Region's Unopposed Motion for Restricted Access to the Proceedings, Pursuant to D.C.Colo.LCivR 7.2(c) [Docket No. 17]. On July 10, 2019, plaintiff filed a response to the motion for a gag order [Docket No. 25].

## I. BACKGROUND

On February 4, 2019, plaintiff filed this lawsuit against defendants, raising claims of assault, battery, and negligence against defendant Lozano and claims of sex discrimination, disability discrimination, and retaliation against defendant The Young Men's Christian Association of the Pikes Peak Region ("YMCA"). Docket No. 1 at 9-12. YMCA seeks (1) the imposition of a gag order "imposing reasonable restrictions on the

release of information to the media and members of the public by any parties or counsel in this litigation." Docket No. 16 at 9. It also requests an order "restricting public access to the entirety of these proceedings or, in the alternative, . . . level 1 restriction for [plaintiff's complaint], as submitted in redacted form herewith, as well as Defendant YMCA's pre-Answer Motion to Strike [Docket No. 15][1] . . . and Motion for a Gag Order [Docket No. 16]." Docket No. 17 at 1.

## II. ANALYSIS

### A. Motion for Gag Order

"A party seeking to impose a gag order on any trial participant must show that there is a 'reasonable likelihood' that media attention or extrajudicial commentary will prejudice a fair trial." *Pfahler v. Swimm*, No. 07-cv-01885-MJW-KLM, 2008 WL 323244, at *1 (D. Colo. Feb. 4, 2008) (citing *United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969)). "[I]n any case involving pretrial publicity, the court must decide whether 'the gravity of the "evil," discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger.'" *Id.* at *2 (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976)). *See also Tijerina*, 412 F.3d at 666 (determining that a gag order is reasonable if it is based on a reasonable likelihood of "prejudicial news which would make difficult the impaneling of an impartial jury and tend to prevent

---

[1]Although YMCA classifies this motion as a motion to strike, the pleading is titled "Defendant the Young Men's Christian Association of the Pikes Peak Region's Unopposed Motion for Restricted Access to the Proceedings, Pursuant to D.C.Colo.LCivR 7.2(c)" and is identical to plaintiff's motion for restricted access that is the subject of this order. *See* Docket Nos. 15, 17. Plaintiff filed a response [Docket No. 26] to this motion on July 10, 2019. The motion to strike, however, was terminated by the magistrate judge previously assigned to this case. *See* Docket No. 15 ("Modified on 6/25/19 to terminate").

a fair trial."). In determining whether a gag order is appropriate, a court should consider (1) "the nature and extent of pretrial news coverage"; (2) "whether other measures would be unlikely to mitigate the effects of pretrial publicity"; and (3) "how effectively a restraining order would operate to prevent the threatened danger." *Nebraska Press Ass'n*, 427 U.S. at 562. The court "must then consider whether the record supports the entry of a prior restraint on publication, one of the most extraordinary remedies known to our jurisprudence." *Id.*

In regard to the extent of pretrial news coverage, the Court finds that it is insubstantial. YMCA contends that, since the filing of plaintiff's complaint, three media sources have published articles related to the lawsuit and that links to these articles have been posted on various social media accounts. Docket No. 16 at 4-5. Specifically, YMCA provides evidence of two Twitter posts and one Facebook post containing links to new articles about the lawsuit. Docket No. 16-3. According to YMCA, the story is now "accessible to literally hundreds of millions of people on social media platforms." Docket No. 16 at 7. YMCA also notes that plaintiff's counsel has given an interview about the case to at least one media outlet.[2] *Id.* at 5.

The number of articles and social media posts concerning this case is small. And YMCA overestimates the level of online engagement these articles and posts have

---

[2]YMCA lists two articles in which plaintiff's counsel is quoted, but it appears that the second article, published in the Legal Reader, merely reprints plaintiff's counsel's quotes from the Colorado Public Radio article. There is no indication that plaintiff's counsel has participated in more than one interview. *See id.*

received.[3]  Although, like anything on the internet, these sources are "accessible to literally hundreds of millions of people" online, *see* Docket No. 16 at 7, YMCA does not show that potential members of the jury pool have been exposed to such articles or have formed negative impressions of YMCA as a result.  Thus, YMCA has failed to show that the nature and extent of pretrial publicity warrants the imposition of a gag order.

The Court finds that other, less-restrictive measures may be taken to mitigate any potential prejudice caused by press coverage of the case.  If the case is tried in Denver, the jury pool will consist of jurors from Jury Division 1, composed of persons residing in twenty-four counties, not including El Paso County.[4]  This mitigates the risk that news coverage from the Colorado Springs area will taint the prospective jury pool.  *See Lord v. Hall*, No. 10-cv-02695-WDM-KLM, 2011 WL 2559824, at *2 (D. Colo. June

---

[3]At the time of this order, the Facebook post has had seventeen "reactions" and two "shares."  *See* Colorado Public Radio, *Lawsuit Alleges Colorado Springs YMCA Ignored Former Employee's Sexual Assault*, Facebook (Feb. 26, 2019), https://www.facebook.com/ColoradoPublicRadio/posts/10157131026569444.  Further, the Twitter posts referenced by YMCA – one from "Colorado Springs Hub" and one from "Fight Sex Crimes" – have experienced even less online engagement.  At the time of this order, each tweet has received zero "retweets" and zero "likes."  *See* Colorado Springs Hub (@Colorado_Sprngs), Twitter (Feb. 25, 2019, 6:03 p.m.), https://twitter.com/Colorado_Sprngs/status/1100214635620384768; *see also* Fight Sex Crimes (@FightSexCrimes), Twitter (Feb. 28, 2019, 2:40 a.m.), https://twitter.com/FightSexCrimes/status/1101069748392153088.

[4]Jury Division 1 consists of Adams, Arapahoe, Boulder, Broomfield, Chaffee, Clear Creek, Denver, Douglas, Elbert, Gilpin, Grand, Jackson, Jefferson, Lake, Larimer, Logan, Morgan, Park, Phillips, Sedgwick, Summit, Washington, Weld, and Yuma Counties.  *See* The United States District Court, District of Colorado, *Jury Frequently Asked Questions (FAQs)*, http://www.cod.uscourts.gov/JurorInformation/JuryFAQs.aspx (last visited July 11, 2019). It does not include El Paso County, the county in which Colorado Springs is located.  *Id.*

28, 2011). Further, "at the time of trial, the potential jury pool will have to go through extensive voir dire," which may include questions about publicity in the case. *See Pfahler*, 2008 WL 323244, at *2. Instructions to disregard certain out-of-court information may be given as needed. The Court finds that any potentially damaging pretrial publicity may be adequately mitigated without the imposition of a gag order.

Finally, with regard to whether a gag order would prevent the purported danger, the information that YMCA seeks to restrain has, by its own admission, already been publicized. Although not wide-reaching, such information is still in the public arena, and the Court cannot suppress access to such information. The Court finds that YMCA has not met its burden of establishing that there is a reasonable likelihood that prejudicial news will make it difficult to impanel an impartial jury and prevent a fair trial so as to justify the invasion of free speech that would result from a gag order. *See Lord*, 2011 WL 2559824, at *3 (finding that defendants' fear of negative publicity absent pretrial gag order did not justify invading plaintiff's right to free speech). The motion for a gag order will be denied.

### B. Motion to Restrict Proceedings

The Supreme Court has acknowledged a common law right of the public to access judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002). There is a presumption that documents essential to the judicial process are to be available to the public, but they may be

5

restricted when the public's right of access is outweighed by interests which favor non-disclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). It is within the district court's discretion to determine whether a particular court document should be restricted. *See Nixon*, 435 U.S. at 599.

A motion to restrict access must (1) "identify the document or the proceeding for which restriction is sought"; (2) "address the interest to be protected and why such interest outweighs the presumption of public access"; (3) "identify a clearly defined and serious injury that would result if access is not restricted"; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question"; and (5) "identify the level of restriction sought." D.C.COLO.LCivR 7.2(c). "[T]he movant shall articulate a real and substantial interest that justifies depriving the public of access to documents that inform[] the court's decision-making process." *Preeson v. Parkview Med. Ctr., Inc.*, No. 15-cv-02263-MSK-KMT, 2017 WL 1197298, at *16 (D. Colo. Mar. 30, 2017).

YMCA first states that "[p]laintiff does not oppose the sealing of the proceedings in the above-captioned matter" and argues that "[f]or this reason alone, the Court should grant level 1 restricted access for the duration" of the proceedings. Docket No. 17 at 3. The fact that the parties agree on restriction is insufficient to overcome the presumption that court proceedings and documents must be available to the public. *See* D.C.COLO.LCivR 7.2(d) ("The absence of objection alone shall not result in the granting of the motion."). YMCA has set forth no law suggesting that closing the entirety of these civil proceedings to the public is warranted in this case. Moreover, YMCA makes no effort to satisfy Local Rule 7.2(c) as to each of the various types of

documents that are typically part of the docket. The Court declines to restrict public access to the entirety of the proceedings.

In the alternative, YMCA argues that the Court should restrict plaintiff's complaint [Docket No. 1], its motion for a gag order [Docket No. 16], and its "motion to strike" [Docket No. 15] to level 1 access. The Court finds that YMCA has failed to meet its pleading burden under D.C.COLO.LCivR 7.2. First, it has failed to "identify a clearly defined and serious injury that would result if access is not restricted." YMCA states that "[t]he threatened harm to Defendant YMCA is profound," Docket No. 17 at 4, but does not specify what it believes the purportedly profound harm to be. To the extent that YMCA implies that its reputation will be damaged absent restriction, *see id.* at 3-4 (describing plaintiff's complaint as containing "baseless, *per se* defamatory, tangential, and extremely prejudicial accusations" and "*ad hominem* attacks . . . which are prejudicial or, in part, defamatory in nature"), YMCA does not identify a "clearly defined and serious injury" that would result if access is not restricted. Thus, it has failed to meet its burden under the Local Rules. *See Richardson v. Gallagher*, No. 10-cv-02097-MSK-CBS, 2012 WL 4359116, at *8 (D. Colo. Sept. 24, 2012) (finding that plaintiff's contention that non-parties would be "embarrassed" absent restriction was "largely speculative" and "unpersuasive").

YMCA has also failed to explain why no alternative to restriction is practicable or why restriction is the only remedy that will adequately protect its interests. "This rule is intended to cause the parties to carefully consider why the information is being presented to the court in the first place, and to think creatively about whether there is a way to achieve that purpose without resorting to a process that shields relevant

7

materials from public review." *Id.* The Court finds that there are less restrictive means through which YMCA could obtain the relief sought. For example, with regard to plaintiff's complaint, YMCA could file a motion under Rule 12 to strike the paragraphs in the complaint that it contends contain inappropriate allegations. *See* Fed. R Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.") Or it could file a motion for sanctions under Rule 11 based on its argument that plaintiff's allegations were "brought in bad[] faith" or were intended to "taint the prospective jury pool." Docket No. 17 at 4; *see also* Fed. R. Civ. P. 11(b)(1)-(3), (c) (stating that a motion for sanctions may be filed if a pleading is presented for an improper purpose, such as harassment, or if the factual contentions have no evidentiary support). As to the other documents it seeks to restrict, YMCA could have filed them as restricted documents along with a motion to restrict. *See* D.C.Colo.LCivR. 7.2(e) ("A document subject to a motion to restrict shall be filed as a restricted document and shall be subject to restriction until the motion is determined by the court."). Because YMCA "failed to avail [itself] of the protections provided by the District's local rules . . ., any claim to confidentiality has been waived." *Gunn v. WCA Logistics, LLC*, No. 13-cv-02197-WJM-MEH, 2016 WL 7868827, at *1 (D. Colo. Jan. 12, 2016). The motion to restrict will be denied.

### III. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant The Young Men's Christian Association of the Pikes Peak Region's Motion for Gag Order [Docket No. 16] is **DENIED**. It is further

**ORDERED** that Defendant The Young Men's Christian Association of the Pikes Peak Region's Unopposed Motion for Restricted Access to the Proceedings, Pursuant to D.C.Colo.LCivR 7.2(c) [Docket No. 17] is **DENIED**.

DATED July 11, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge